DAVID C. SHONKA
Acting General Counsel

HONG PARK, DC Bar No. 475930
Federal Trade Commission
600 Pennsylvania Ave., N.W., CC-9528
Washington, DC 20580
(202) 326-2158 (direct), -3197 (fax)
hpark@ftc.gov

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>JAMIE L. WHITE,<br><br>        Defendant. | Case No. _____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of

1

ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with providing order fulfillment services and fraudulent merchant accounts to deceptive telemarketing operations.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101–6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and

the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 6102(c), and 6105(b).

## DEFENDANT

6.     Defendant Jamie L. White resides in Utah, and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

7.     At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

8.     Beginning sometime in March of 2015 and continuing until at least February 27, 2017, Defendant and her associates orchestrated a scheme to provide order fulfillment and payment processing services to telemarketing operations engaged in deceptive practices.  Defendant and her associates provided these services to telemarketing operations owned and managed by Carl E. Morris, Jr. and located primarily in and around Phoenix, Arizona (collectively, "Telemarketing Operations").

9.     The Telemarketing Operations deceived consumers by peddling purported opportunities involving Amazon-linked websites and grants, with false promises of substantial income.  No consumers generated income through these opportunities.  Defendant knew that the Telemarketing Operations were making

3

these false promises throughout the course of Defendant's participation in the scheme.

10.     Defendant provided order fulfillment services to the Telemarketing Operations.  For consumers purchasing Amazon-linked website opportunities, Defendant used a template to create nominal websites linked to Amazon.com.  The websites were practically indistinguishable from each other, did not function in numerous instances, and were not designed to generate the web traffic necessary to provide the promised income.

11.     For consumers purchasing the grant opportunities, Defendant provided purported training material for applying for grants.  The training material contained general information and could never lead to successful grant applications because the grants promised to consumers did not exist.

12.     In addition, Defendant participated in all of the critical decisions to provide the Telemarketing Operations with straw merchant accounts to process consumer credit card payments for the worthless opportunities.  In order to process credit card payments, a business needs a merchant account with an "acquirer" (i.e., a financial institution that is a member of the card associations, such as MasterCard or Visa).  These acquirers have screening and underwriting standards for opening merchant accounts that the Telemarketing Operations could not meet given their deceptive business activity.  The straw merchant accounts created by Defendant and her associates enabled the Telemarketing Operations to circumvent these standards by masking the true nature of their business activity from the

4

acquirers.

13.    Defendant and her associates obtained the straw merchant accounts by first recruiting individuals to serve as "nominees."  The nominees served as the principals of straw companies in whose names the merchant accounts were opened.  Defendant forged financial documents to fabricate corporate histories for the straw companies, and provided these documents to her associates for the purpose of obtaining merchant accounts.  Defendant's associates used these documents, along with the nominees' personal information (such as address and telephone, driver's license, and Social Security numbers) and the straw companies' corporate information, to apply for the merchant accounts through acquirers or their independent sales organizations ("ISOs").

14.    After approval of the applications created by Defendant and her associates, the acquirers or their ISOs opened merchant accounts under written agreements with the straw companies.  The written agreements only authorized the processing of credit card transactions between the straw companies and their customers.  Defendant and her associates, however, submitted the Telemarketing Operations' consumer credit card transaction records for processing through these merchant accounts.  Defendant also attempted to minimize chargebacks of consumer payments by providing acquirers and their ISOs with misleading information to dispute consumer complaints regarding the worthless opportunities sold by the Telemarketing Operations.

15.    The acquirers deposited consumer payments processed through the

straw merchant accounts into bank accounts opened by the nominees in the straw

companies' names.  Defendant and her associates maintained the credentials to

control the funds deposited into these bank accounts.

16.     Typically, the nominees were unsophisticated individuals who were

not aware that Defendant and her associates used their personal and corporate

information to submit merchant account applications, and did not know that the

Telemarketing Operations used the merchant accounts to process consumer credit

card payments for the worthless opportunities.  The nominees received a small

percentage of the consumer credit card payments processed through the merchant

accounts for their services.

17.     On or about May 2, 2016, Defendant and her associates prepared and

submitted a merchant account application to CardFlex, Inc. d/b/a Cliq

("CardFlex"), an ISO for BMO Harris Bank, N.A. ("BMO"), using:  nominee

David Turnbull's personal information; the corporate information for Velocity

Solutions LLC, which Turnbull created at the direction of Defendant's associates;

and financial documents forged by Defendant.  On or about May 3, 2016,

CardFlex processed the application and opened a merchant account with Merchant

Number ending in 9916.  The merchant account operated under a written

agreement with Velocity Solutions LLC, BMO, and Priority Payment Systems

("PPS"), a payment processor for BMO.  The written agreement authorized only

the processing of credit card transactions between Velocity Solutions LLC and its

customers.

18.     On or about May 18, 2016, Defendant and her associates prepared and submitted a merchant account application to CardFlex using:  nominee Ronald Bourgard's personal information; the corporate information for Bay Harbor Associates Inc., which Bourgard provided at the direction of Defendant's associates; and financial documents forged by Defendant.  On or about May 20, 2016, CardFlex processed the application and opened a merchant account with Merchant Number ending in 3518.  The merchant account operated under a written agreement with Bay Harbor Associates Inc., BMO, and PPS, that authorized only the processing of credit card transactions between Bay Harbor Associates Inc. and its customers.

19.     On or about June 13, 2016, Defendant and her associates prepared and submitted an application for a merchant account to CardFlex using:  nominee Jack Gouverneur's personal information; the corporate information for Bay Harbor Associates LLC, which Gouverneur created at the direction of Defendant's associates; and financial documents forged by Defendant.  On or about June 14, 2016, CardFlex processed the application and opened a merchant account with Merchant Number ending in 4390.  The merchant account operated under a written agreement with Bay Harbor Associates LLC, BMO, and PPS, that authorized only the processing of credit card transactions between Bay Harbor Associates LLC and its customers.

20.     On or about June 14, 2016, Defendant and her associates prepared and submitted a merchant account application to CardFlex using nominee Hugh

7

Hubbard's personal information; the corporate information for Texport Electronic Sales Company, which Hubbard created at the direction of Defendant's associates; and financial documents forged by Defendant.  On or about July 1, 2016, CardFlex processed the application and opened a merchant account with Merchant Number ending in 8895.  The merchant account operated under a written agreement with Texport Electronic Sale Company, BMO, and PPS, that authorized only the processing of credit card transactions between Texport Electronic Sales Company and its customers.

21.     On or about July 27, 2016, Defendant and her associates prepared and submitted a second merchant account application to CardFlex using Hubbard's personal information; the corporate information for Texport Electronic Sales Company; and financial documents forged by Defendant.  On or about August 1, 2016, CardFlex processed the application and opened a merchant account with Merchant Number ending in 6433.  The merchant account operated under a written agreement with Texport Electronic Sales Company, BMO, and PPS, that authorized only the processing of credit card transactions between Texport Electronic Sales Company and its customers.

22.     Defendant and her associates forged the nominees' signatures on each of the merchant account applications identified in Paragraphs 17 to 21 ("Applications") and submitted the Applications without the knowledge or consent of the nominees.

23.     Each of the merchant accounts identified in Paragraphs 17 to 21

("Merchant Accounts") processed consumer credit card payments for the Telemarketing Operations and not the corporate entities named in the Applications or the corresponding agreements with BMO and PPS.

24.     Despite Defendant's efforts to minimize chargebacks, by October 2016, CardFlex had notified the nominees that each of the Merchant Accounts were terminated for excessively high chargeback rates (47% for the Merchant Accounts, collectively).

25.     Prior to terminating the Merchant Accounts, the Merchant Accounts processed approximately $3,074,000 in net consumer credit card payments for deceptive products and services sold by the Telemarketing Operations.

26.     Upon information and belief, Defendant and her associates obtained additional fraudulent merchant accounts used to process consumer credit card payments for the Telemarketing Operations, by submitting false applications and causing acquirers and their payment processors to enter into agreements with straw companies.

### VIOLATIONS OF THE TSR AND THE FTC ACT

27.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

28.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. §

9

6102(c) and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

29.     The TSR prohibits any person from providing substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is making a false or misleading statement to induce any person to pay for goods or services.  16 C.F.R. §§ 310.3(a)(4) and (b) (prohibition against assisting and facilitating).

30.     The Telemarketing Operations are telemarketers under the TSR.  *Id.* at § 310.2(cc).

31.     Except as expressly permitted by the applicable credit card system, the TSR prohibits any person from employing, soliciting, or otherwise causing a merchant, or an employee, representative or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant.  16 C.F.R. §§ 310.3(c)(2) (prohibition against credit card laundering).

32.     The nominees' straw companies described in Paragraphs 13 to 21 are merchants under the TSR.  16 C.F.R. § 310.2(u).

### Count I – Assisting and Facilitating

33.     In numerous instances in connection with arranging the opening of merchant accounts, Defendant provided substantial assistance or support to the

Telemarketing Operations when Defendant knew or consciously avoided knowing that the Telemarketing Operations were making false or misleading statements to induce consumers to pay for goods or services.

34.     Defendant's acts or practices, as described in Paragraph 33 above, violate the TSR, 16 C.F.R. § 310.3(b).

## Count II – Assisting and Facilitating

35.     In numerous instances in connection with fulfilling consumer orders for purported opportunities involving Amazon-linked websites and grants, Defendant provided substantial assistance or support to the Telemarketing Operations when Defendant knew or consciously avoided knowing that the Telemarketing Operations were making false or misleading statements to induce consumers to pay for goods or services.

36.     Defendant's acts or practices, as described in Paragraph 35 above, violate the TSR, 16 C.F.R. § 310.3(b).

## Count III – Credit Card Laundering

37.     In numerous instances, and without the express permission of the applicable credit card system, Defendant has employed, solicited or otherwise caused nominees' companies to present to or deposit into, the credit card payment system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the nominees' companies.

38.     Defendant's acts or practices, as described in Paragraph 37 above,

violate the TSR, 16 C.F.R. § 310.3(c)(2).

## CONSUMER INJURY

39.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act.  In addition, Defendant has been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

40.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

41.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendant;

B.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the FTC Act and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

David C. Shonka
Acting General Counsel

Dated:  December 6, 2017                 */s/ Hong Park*
                                          Hong Park
                                          Federal Trade Commission
                                          600 Pennsylvania Ave., NW
                                          Mail Drop CC-9528
                                          Washington, DC 20580
                                          hpark@ftc.gov
                                          (202) 326-2158 (direct), -3197 (fax)

                                          Attorneys for Plaintiff
                                          FEDERAL TRADE COMMISSION